UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARLA CAREY, | |
| Plaintiff, | No. 20 C 7266 |
| v. | Judge Thomas M. Durkin |
| CHICAGO TRANSIT AUTHORITY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Marla Carey alleges that her employer, the Chicago Transit Authority, retaliated against her for complaining about being harassed by a co-worker. The CTA has moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 14. That motion is denied in part and granted in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Carey began working for the CTA in 1997. In 2017, Carey was transferred to the mailroom of a certain CTA department.

Paul Smith was one of Carey's co-workers. Beginning in May 2018, Smith "disparaged, physically intimidated, and threatened [Carey] with physical violence." R. 1 ¶ 2. Carey complained to her supervisors in June 2018. After that, Smith's intimidation and threats increased, including mentioning that he knew where Carey lived and could get someone to "jump" her. *Id.* ¶ 28.

Carey reported Smith to the police on November 17, 2018, *id.* ¶ 29, and again reported him to her supervisors on November 28, 2018, *id.* ¶ 33. Her supervisors "demanded that [Carey] withdraw her complaint and retract her statement," and indicated that failure to do so would result in her termination. *Id.* ¶ 37. For the next few days, Carey met with her supervisors and union representatives daily. *Id.* ¶ 39. On November 30, one of Carey's supervisors issued a "Notice of Investigation of

Alleged Misconduct or Rule Violation," regarding Carey's conduct, which required her to report for an inquiry on December 3. *Id.* ¶ 41. At the meeting on December 3, Carey's supervisors told her that she was required to provide them with the police report she had filed. *Id.* ¶ 42. They then told her that "she would be suspended as of that day and that she should not report back until her discharge hearing on December 10, 2018, after which they would terminate her employment." *Id.* ¶ 45.

On December 7, 2018, the Circuit Court of Cook County issued a restraining order against Smith. *Id.* ¶ 46. On December 10, the CTA fired Carey based on findings that she had made false claims against Smith. *Id.* ¶ 48.

Pursuant to 42 U.S.C. § 1983, Carey claims that the CTA retaliated against her in violation of the First Amendment. She also claims that the CTA's conduct violated the Illinois Whistle Blower Protection Act. The CTA argues that both claims are untimely, and that Carey has failed to state a *Monell* claim against the CTA.

## Analysis

I. **Section 1983**

  A. **Timeliness**

The statute of limitations for Section 1983 claims brought in Illinois is two years. *See Savory v. Cannon*, 947 F.3d 409, 413 (7th Cir. 2020). The CTA argues that Carey was notified of her termination on December 3, 2018, but she did not bring this action until December 9, 2020, more than two years later. Carey argues that she was not fired until December 10, 2010, so her Section 1983 claim is timely.

The CTA relies primarily on *Chardon v. Fernandez*, in which the Supreme Court held that a retaliatory termination claim accrued when the plaintiff "was notified by letter that his [job] would terminate at a specified [future] date." 454 U.S. 6, 7 (1981). In *Chardon*, the Court explained that "the proper focus is on the time of discriminatory act, not the point when the consequences of the act become painful." *Id.* at 8.

Carey alleges that on December 3, 2018, her supervisors told her she would have a "discharge hearing on December 10, 2018, after which they would terminate her employment." R. 1 ¶ 44. The CTA argues that Carey "clearly alleges that the decision to terminate [her] was made prior to her discharge hearing," and that her termination was not merely threatened on December 3 but had already been decided. R. 20 at 4.

Contrary to the CTA's argument, Carey's allegations do not settle whether her claim accrued on December 3 or December 10. As Carey argues, if the CTA could not fire her until a discharge hearing was held, then an off-the-record comment by her supervisors that they had already decided to fire her is not analogous to the formal notice of termination at issue in *Chardon*. But if the December 10 discharge hearing was merely a finalization of a formal decision that was made on December 3, then that might be the day of the "discriminatory act" for accrual purposes. Carey's allegations are ambiguous in this regard. More facts about the circumstances and the CTA's policies must be known before the Court can make a finding about accrual and

whether Carey's Section 1983 claim is timely. So the Court will not dismiss the claim as untimely at this stage of the proceedings.

B. *Monell*

To state a claim for municipal liability under Section 1983, a plaintiff must allege that the constitutional violation was caused by either: (1) an express municipal policy; (2) a widespread municipal practice; or (3) a person with final policymaking authority. *See Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Carey does not allege policy or practice, so the question is whether she was fired by CTA policymakers.

The CTA points out that Carey does not make any explicit allegation about whether she was fired by CTA policymakers. And the CTA argues further that "the only policymaking authority at CTA is the Chicago Transit Board, and [Carey] makes no reference to any actions taken by the Chicago Transit Board in her complaint." R. 15 at 8.

The Seventh Circuit has held that "the CTA Board is the official policymaker for employment decisions." *Radic v. Chicago Transit Auth.*, 73 F.3d 159, 161 (7th Cir. 1996). But the Seventh Circuit also noted that a plaintiff bringing a *Monell* claim against the CTA for improper termination would need "to show that the Board somehow acted to confer policymaking authority on a particular official before his or her actions could be considered policy decisions." *Id.* As noted, Carey has not explicitly alleged that the CTA Board made a "delegation of authority to set policy for hiring and firing" to Carey's supervisors. *See Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737

5

(7th Cir. 1999). And the "mere unreviewed discretion of authority to make hiring and firing decisions does not amount to a policymaking authority" without "a delegation of authority to set policy for hiring and firing." *Id.* But the Court can reasonably infer from the allegation that a certain person had the discretion to make hiring and firing decisions that such a person has also been delegated policymaking authority. *See Kristofek v. Village of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) ("firing decisions [that] were not reviewed" plausibly allege policymaking authority); *Thuet v. Chicago Pub. Sch.*, 2020 WL 5702195, at *4 (N.D. Ill. Sept. 24, 2020) (same). And whether such delegation has occurred is generally a fact-based analysis. *See Kujawski*, 183 F.3d at 737-38 (considering evidence of delegation on summary judgment); *see also Butler-Burns v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 2018 WL 1468996, at *8 (N.D. Ill. Mar. 26, 2018) (deciding delegation issue on summary judgment). Indeed, the primary case cited by the CTA decided the delegation question on summary judgment. *See Radic*, 73 F.3d at 160. It may be that the CTA Board did not delegate any policymaking authority to Carey's supervisors. But Carey will have the opportunity to take discovery on that issue.

## II. Whistle Blower Act

The CTA also argues that the Whistle Blower Act has a one-year statute of limitations, and so Carey's claim under that Act is untimely. The Whistle Blower Act does not include a statute of limitations. But under the Metropolitan Transit Authority Act, tort claims against the CTA have a statute of limitations of one year. *See* 70 ILCS § 3605/41.

6

Carey argues that the one-year statute of limitations should not apply to retaliatory discharge claims for the same reasons a district court held that the one-year statute of limitations in the Tort Immunity Act does not apply to retaliatory discharge claims. *See* R. 19 at 10 (citing *Zelman v. Hinsdale Twp. High Sch. Dist. 86*, 2010 WL 4684039 at 2 (N.D. Ill. Nov. 12, 2010)). But *Zelman* is an "outlier" that has been rejected by all other district courts to consider the issue. *See Elue v. City of Chicago*, 2017 WL 2653082, at *8-9 & n.10 (N.D. Ill. June 20, 2017). Those courts have all held that the one-year statute of limitations applies. *See id.*; *see also Klee v. McHenry Cty. Coll.*, 2017 WL 3168973, at *4 (N.D. Ill. July 26, 2017); *Vasquez v. Bd. of Educ. for Sch. Dist. U-46*, 2017 WL 1250839, at *4 (N.D. Ill. Apr. 5, 2017); *Williams v. Off. of Chief Judge of Cook Cty.*, 2015 WL 2448411, at *13 & n.11 (N.D. Ill. May 21, 2015). This Court agrees, so Carey's Whistle Blower Act claim is untimely.

But Carey argues further that even if the one-year statute of limitations bars her claim for damages, it does not bar her claim for injunctive and other equitable relief. She makes this argument, however, with reference to the Tort Immunity Act. As discussed, it is the Metropolitan Transit Authority Act that is relevant here. Carey has not made any argument that the Metropolitan Transit Authority Act permits equitable relief even if damages claims are untimely. Therefore, the Court will not make that distinction and the entirety of Carey's Whistle Blower Act claim is dismissed.

### III. Punitive Damages

Lastly, Defendants moved to dismiss Carey claim for punitive damages. Carey did not respond to this motion in her brief. By failing to respond, Carey has conceded the argument, so her claim for punitive damages is dismissed.

### Conclusion

Therefore, the CTA's motion to dismiss [14] is denied in part and granted in part. The motion is denied in that Carey's Section 1983 claim will proceed. The motion is granted in that Carey's claims under the Whistle Blower Act claim and for punitive damages are dismissed.

By May 17, 2021, the parties should submit a status report with a proposed discovery schedule. The parties should also state whether the status hearing set for May 24, 2021 continues to be necessary.

ENTERED:

_Thomas M. Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: May 10, 2021